Slip Op.19-84

## UNITED STATES COURT OF INTERNATIONAL TRADE

STAR PIPE PRODUCTS,

        Plaintiff,

    v.

UNITED STATES,

        Defendant.

Before: Mark A. Barnett, Judge
Court No. 17-00229

**PUBLIC VERSION**

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's scope determination regarding steel threaded rod from the People's Republic of China and denying Plaintiff's challenge to Commerce's liquidation instructions to U.S. Customs and Border Protection associated with the scope determination as moot.]

Dated: July 8, 2019

Kavita Mohan and Ned H. Marshak, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, argued for Plaintiff. With them on the brief was Francis J. Sailer.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Elizabeth A. Speck, Senior Trial Counsel. Of counsel on the brief was Khalil N. Gharbieh, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Barnett, Judge: This action involves a challenge to a U.S. Department of Commerce ("Commerce" or "the agency") scope determination for the antidumping duty order on steel threaded rod ("STR") from the People's Republic of China ("the PRC" or "China"). *See Certain Steel Threaded Rod from the People's Republic of China*, 74

Fed. Reg. 17,154 (Dep't Commerce Apr. 14, 2009) (notice of antidumping duty order)

("*STR Order*"); Final Scope Ruling for Star Pipe Products' Joint Restraint Kits, A-570-

932 (July 31, 2017) ("Final Scope Ruling"), ECF No. 16-3; Compl., ECF No. 2.[1]  Plaintiff,

Star Pipe Products ("Star Pipe"), seeks judgment on the agency record pursuant to U.S.

Court of International Trade ("CIT") Rule 56.2 regarding Commerce's determination that

the STR components of Star Pipe's Joint Restraint Kits are subject to the *STR Order*.

*See* Pl.'s Mot. for J. on the Admin. R. and Mem. of Law in Supp. of Pl.'s Mot. for J. on

the Agency R. ("Pl.'s Mem.") at 9-28, ECF No. 21; Star Pipe Prods.' Reply Br. ("Pl.'s

Reply") at 1-13, ECF No. 28.   Star Pipe further argues that Commerce improperly

issued liquidation instructions ordering U.S. Customs and Border Protection ("CBP") to

retroactively suspend liquidation of, or assess antidumping duties on, the STR

components of the Joint Restraint Kits that Star Pipe entered before the date on which

Commerce initiated a formal scope inquiry.   *See* Pl.'s Mem. at 28-34; Pl.'s Reply at 13-

21.   Defendant, United States ("the Government"), urges the court to sustain

Commerce's scope determination and asserts that Commerce has issued lawful

liquidation instructions to CBP.   Def.'s Resp. to Pl.'s Mot. for J. Upon the Agency R.

("Def.'s Resp.") at 5-28, ECF No. 25.   For the reasons discussed herein, the court

---

[1] The administrative record filed in connection with the Final Scope Ruling is divided into a Public Administrative Record ("PR"), ECF No. 16-1, and a Confidential Administrative Record ("CR"), ECF No. 16-2.  Parties submitted joint appendices containing record documents cited in their briefs. *See* Public J.A., ECF No. 30; Confidential J.A., ECF No. 29.  The court references the confidential versions of the relevant record documents, unless otherwise specified.

sustains Commerce's scope determination and denies as moot Plaintiff's challenge to

the liquidation instructions.

BACKGROUND

Commerce issued the *STR Order* on April 14, 2009.  *See STR Order*, 74 Fed.

Reg. at 17,154.  Therein, Commerce defined the scope of the order as follows:

> The merchandise covered by this order is steel threaded rod. Steel
> threaded rod is certain threaded rod, bar, or studs, of carbon quality steel,
> having a solid, circular cross section, of any diameter, in any straight
> length, that have been forged, turned, cold-drawn, cold-rolled, machine
> straightened, or otherwise cold-finished, and into which threaded grooves
> have been applied. In addition, the steel threaded rod, bar, or studs
> subject to this order are non-headed and threaded along greater than 25
> percent of their total length. A variety of finishes or coatings, such as plain
> oil finish as a temporary rust protectant, zinc coating (i.e., galvanized,
> whether by electroplating or hot-dipping), paint, and other similar finishes
> and coatings, may be applied to the merchandise.

*Id*. at 17,155.  Commerce also set forth certain metallurgical requirements for in-scope

products; several exclusions from the scope; and the relevant Harmonized Tariff

Schedule ("HTSUS") subheadings for "convenience and customs purposes."  *Id.*

On October 5, 2016, Star Pipe, a U.S. importer, requested a scope determination

regarding its Joint Restraint Kits.  *See* Scope Ruling Req. for Joint Restraint Kits (Oct. 5,

2016), CR 1, PR 1-2.  The Joint Restraint Kits in question consist of a combination of

castings, bolts, bolt nuts, washers, and STR components and "are used in the water

and wastewater industry to connect and secure pipes and to bolt together pipe joints, so

that the pipe joints form a water tight restraint to maintain the free and controlled flow of

water/waste water."  *Id.* at 2.

Star Pipe acknowledged that the kits contain STR components that, if imported alone, would be subject to the *STR Order*. *Id.* Star Pipe argued, however, that because the STR components are "incidental to the kit itself," the Joint Restraint Kits should not be subject to the *STR Order*. *Id.* at 2-3. Vulcan Threaded Products, Inc. ("Vulcan"), a U.S. producer of steel threaded rod, opposed Star Pipe's request. *See* Vulcan's Opp'n to Tianjin Star's Scope Ruling Req. (Nov. 18, 2016) ("Vulcan's Opp'n"), PR 4.[2] On January 3, 2017, Star Pipe provided Commerce with additional information requested by the agency. *See* Scope Ruling Req. for Joint Restraint Kits (Jan. 3, 2017), CR 2, PR 6 (supplement). Thereafter, Commerce extended the deadline for issuing a final scope ruling to April 3, 2017. *See* Ext. of Deadline for Final Scope Ruling (Feb. 13, 2017), PR 9.

On March 31, 2017, Commerce initiated a formal scope inquiry. *See* Scope Inquiry Initiation (March 31, 2017) ("Inquiry Initiation Notice"), PR 11. Commerce explained that it initiated the inquiry pursuant to 19 C.F.R. § 351.225(e) "[i]n order to fully consider the submissions that we have received in connection with Star Pipe's scope ruling request." *Id.* at 1. Commerce noted that "formal initiation does not preclude [the agency] from issuing a decision based on the criteria enumerated in 19 [C.F.R. §] 351.225(k)(1)." *Id.* Star Pipe and Vulcan filed comments in the scope inquiry.

---

[2] It is unclear why Vulcan attributed the scope ruling request to Tianjin Port Free Trade Zone Tianjin Star International Trade Co., Ltd. ("Tianjin Star"). *See* Vulcan's Opp'n at 1. Star Pipe [[
          ]]. *See* Confidential Joint Status Report in Resp. to the Court's Order ("Jt. Status Report"), Ex. B (Decl. of David M. Murphy Responding to Decl. of Merlin A. Hymel, Jr.), Attach. 1-2, ECF No. 49-2.

*See* Comments on Initiation of Scope Inquiry Concerning Joint Restraint Kits (Apr. 10,

2017) ("Star Pipe's Cmts."), PR 12; Vulcan's Rebuttal to Star Pipe's Scope Ruling

Initiation Comments (Apr. 17, 2017), PR 13.

On July 31, 2017, Commerce issued its scope determination in which it

concluded that the STR components within Star Pipe's Joint Restraint Kits are subject

to the *STR Order*.  *See* Final Scope Ruling at 1.  Commerce further explained that, "[a]s

to . . . the effective date of a final affirmative scope determination," it would "issue

instructions to [CBP] in accordance with [its] regulations," 19 C.F.R. § 351.225(f)(4) and

(l)(3).  *Id.* at 9.  On August 10, 2017, Commerce instructed CBP to

> [c]ontinue to suspend liquidation of entries of steel threaded rod from the
> People's Republic of China, including the steel threaded rod components
> of Star Pipe Products' Joint Restraint Kits, imported by Star Pipe Products
> . . . , subject to the antidumping duty order on steel threaded rod from the
> People's Republic of China.

Req. for Clarification on the Dep't's Final Scope Ruling for Joint Restraint Kits (Aug. 21,

2017), Attach. 1 (CBP Message No. 7222301 (Aug. 10, 2017)), PR 21.

On August 21, 2017, Star Pipe requested Commerce to clarify whether "the

instructions . . . are intended to suspend liquidation and assess [antidumping duties] on

Star Pipe's imports of Joint Restraint Kits entered prior to the date of initiation or are

intended . . . to be prospective only."  *Id.* at 3.  Commerce did not respond to Star Pipe's

request for clarification before the court assumed jurisdiction over the matter on August

30, 2017.  *See* Summons, ECF No. 1; Def.'s Resp. at 23 n.6.  On October 3, 2017, the

court enjoined liquidation of unliquidated entries of Star Pipe's Joint Restraint Kits.

Order (Oct. 3, 2017) ("Oct. 3, 2017 Order"), ECF No. 15.

On November 30, 2018, the court ordered the parties to file a joint status report explaining whether liquidation of Star Pipe's Joint Restraint Kits that entered before Commerce initiated the scope inquiry on March 31, 2017, had been suspended and as of what date any suspension occurred.  *See* Order (Nov. 30, 2018) ("Nov. 30, 2018 Order"), ECF No. 32 (noting the Parties' inconsistent statements on the matter). Following several extensions, on March 4, 2019, the parties filed a Joint Status Report. *See* Jt. Status Report.  On May 22, 2019, the court heard oral argument on Star Pipe's motion for judgment on the agency record.  *See* Docket Entry, ECF No. 57.

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi)(2012),[3] and 28 U.S.C. § 1581(c).  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

I.   **Plaintiff's Challenge to Commerce's Scope Determination**

   A.  **Legal Framework for Mixed Media Scope Determinations**

Because descriptions of merchandise covered by the scope of an antidumping or countervailing duty order must be written in general terms, issues may arise as to whether a particular product is included within the scope of such an order.  *See* 19 C.F.R. § 351.225(a).  When those issues arise, Commerce's regulations provide for the

---

[3] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code and all citations to the U.S. code are to the 2012 edition, unless otherwise specified.

agency to issue "scope rulings" that clarify whether the contested product falls within an

antidumping or countervailing duty order's scope.  *Id*.  Although there are no specific

statutory provisions that govern the interpretation of the scope of an order, the

determination of whether a product is included within the scope of an order is governed

by case law and the regulations published at 19 C.F.R. § 351.225.  *Meridian Prods.,*

*LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) (citation omitted); *see also*

*Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1071-72 (Fed. Cir. 2001) (noting

that 19 C.F.R. § 351.225 governs the determination whether an antidumping duty order

covers a product).

          Scope determinations for particular products generally proceed in the following

order.  Initially, Commerce examines the relevant scope language.  *See, e.g.*, *Duferco*

*Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (explaining that the

language in the order is the "predicate for the interpretive process" and the

"cornerstone" of a scope analysis).  If the language is ambiguous, Commerce next

interprets the scope "with the aid of" the sources set forth in 19 C.F.R. § 351.225(k)(1).

*Meridian Prods*., 851 F.3d at 1382 (quoting *Duferco Steel*, 296 F.3d at 1097).

Specifically, Commerce considers the description of the merchandise in the petition and

initial investigation, and prior determinations by Commerce (including scope

determinations) and the International Trade Commission ("ITC").  *See Meridian Prods*.,

851 F.3d at 1381 (citing 19 C.F.R. § 351.225(k)(1) (the "(k)(1) factors")).  If the (k)(1)

materials are dispositive, Commerce issues a final scope ruling.  *See* 19 C.F.R.

§ 351.225(d).[4]  When the (k)(1) materials are not dispositive, Commerce considers the

factors stated in subsection (k)(2) of the regulation.  *See* 19 C.F.R. § 351.225(k)(2).[5]

        In addition to being imported as a distinct item, subject merchandise may be

imported as a component of another product or packaged with non-subject merchandise

(referred to as "mixed media").  *See Walgreen Co. of Deerfield, Ill. v. United States*, 620

F.3d 1350, 1353-54 (Fed. Cir. 2010).  The U.S. Court of Appeals for the Federal Circuit

("Federal Circuit") has recognized Commerce's discretion to decide whether "a set of

related products is merely a combination of subject and non-subject merchandise" or "a

unique product."  *Walgreen*, 620 F.3d at 1355; *id.* at 1354-57 (affirming Commerce's

decision to treat gift bag sets containing tissue paper and a bow as packages of subject

and non-subject merchandise and not as unique products).  In prior determinations,

Commerce has excluded unique products from the scope of an order arguably

applicable to a subject component while including subject merchandise merely

packaged with non-subject items when such sets did not constitute a unique product.

*See Mid Continent Nail Corp. v. United States* ("*Mid Continent III*"),[6] 725 F.3d 1295,

1298 (Fed. Cir. 2013) (Commerce has "historically" answered the question whether

---

[4] To be dispositive, the (k)(1) materials "must be 'controlling' of the scope inquiry in the sense that they definitively answer the scope question." *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

[5] Specifically, Commerce will consider: "(i) [t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2) (the "(k)(2) factors").

[6] There are five judicial opinions in the *Mid Continent* line of cases.  The CIT issued two opinions prior to the Federal Circuit's opinion in *Mid Continent III* and two thereafter.

potentially-subject merchandise "packaged and imported together with non-subject

merchandise" was within the scope of a particular order "as depending on whether the

mixed media item is to be treated as a single, unitary item, or a mere aggregation of

separate items") (citing *Walgreen*, 620 F.3d at 1355-56); *cf. Walgreen*, 620 F.3d at 1357

(sustaining Commerce's decision that subject tissue paper in the gift bag sets was

covered by an antidumping duty order on certain tissue paper from China).

      The underlying scope determination in *Walgreen* was affirmative: the tissue

paper component of a gift bag set remained within the scope of the order on tissue

paper.  By contrast, in the *Mid Continent* cases, the underlying determination was

negative: the otherwise subject nails were excluded from the scope of an order on nails

when included as a component in a tool kit based on an analysis of the (k)(2) factors.

*See Mid Continent Nail Corp. v. United States* ("*Mid Continent I*"), 35 CIT 566, 572, 770

F. Supp. 2d 1372, 1377 (2011); *Mid Continent Nail Corp. v. United States* ("*Mid*

*Continent II*"), 36 CIT 372, 373, 825 F. Supp. 2d 1290, 1292 (2012).  The *Mid Continent*

line of cases represents a dividing line in the analysis of mixed media sets relative to

scope questions and necessitates a full discussion.

      In *Mid Continent*, after Commerce found that otherwise subject nails were

excluded from the relevant order when included as part of a tool kit worth more than

twenty times the value of the nails, domestic interests appealed that ruling to the CIT.

*See Mid Continent I*, 35 CIT at 572, 770 F. Supp. 2d at 1377.  Initially, the CIT

remanded Commerce's scope determination for the agency to identify "a test it will

employ consistently" to determine the subject of the scope inquiry (i.e., the mixed media

set as a whole or the subject component) and "the legal justification for employing such

a test at all."  *See id.* at 578, 770 F. Supp. 2d at 1383.  On remand, Commerce sought

to ground its mixed media analysis in legal authority[7] and set forth criteria the agency

would apply to identify the relevant subject of the scope inquiry.  *Mid Continent II*, 36

CIT at 373-75, 825 F. Supp. 2d at 1293-94 (citations omitted).  The court, however,

rejected Commerce's criteria because they "invite[d] analysis of the product in question

rather than interpretation of the [order]" and were unsupported by the cited authority.

*See id.* at 375, 825 F. Supp. 2d at 1294.  The court found that the nails at issue were

covered by the scope of the order "and there [was] no support in the law or the record

for concluding otherwise."  *Id.* at 378, 825 F. Supp. 2d at 1296.

On appeal,[8] the Federal Circuit disagreed with the CIT, finding that "[b]ecause

orders are subject to interpretation," Commerce has "the authority to conduct a mixed

media inquiry and to exclude from the scope of the order otherwise-subject

merchandise included within a mixed media item."  *Mid Continent III*, 725 F.3d at 1301.

---

[7] Specifically, Commerce pointed to the antidumping statute, 19 U.S.C. § 1673, which requires Commerce to impose duties on "a class or kind of merchandise"; agency regulations, 19 C.F.R. § 351.225(a), which recognize that orders "must be written in general terms" and authorize Commerce to issue scope determinations; and the Federal Circuit's opinions in *Walgreen*, 620 F.3d at 1350, and *Crawfish Processors Alliance v. United States,* 483 F.3d 1358 (Fed. Cir. 2007).  *See Mid Continent II*, 36 CIT at 373-74, 825 F. Supp. 2d at 1293 (citations omitted).

[8] On remand pursuant to *Mid Continent II*, Commerce issued a scope determination under protest in which it found the nails within the tool kits to be within the scope of the order, and the CIT affirmed.  *See Mid Continent III*, 725 F.3d at 1300; *Mid Continent Nail Corp. v. United States*, Slip Op. 12-97, 2012 WL 3024229, at *1 (CIT July 25, 2012) (rendering judgment).  The defendant and defendant-intervenor appealed to the Federal Circuit.  *Mid Continent III*, 725 F.3d at 1300.

Principles of due process require, however, "that before an agency may enforce an

order or regulation by means of a penalty or monetary sanction, it must 'provide

regulated parties fair warning of the conduct [the order or regulation] prohibits or

requires.'"  *Id*. at 1300-01 (quoting *Christopher v. SmithKline Beecham Corp.,* 567 U.S.

142, 156 (2012) (alteration original)); *see also id.* at 1298 (Commerce must write its

orders with sufficient detail so as to provide "[]adequate notice to regulated parties")

(citing 19 U.S.C. § 1673e(a)(2)).  On that basis, the Federal Circuit also rejected

Commerce's criteria for interpreting the order (provided in the first remand

determination) because "it did not exist at the time that the order was issued."  *Id.* at

1302.  The Federal Circuit then provided "Commerce one last opportunity to interpret its

order" and provided "guidance" for the agency to consider on remand and in "future

cases."  *Id.* at 1302.  That guidance, which was necessarily advisory, consisted of a

two-step interpretive process for conducting mixed media scope inquiries.  *See id.* at

1302-05.

        First, the Federal Circuit called for the agency to "determine whether the

potentially-subject merchandise included within the mixed media item is within the literal

terms of the antidumping order."  *Id.* at 1302.  When there is a dispute as to this step,

Commerce would follow the procedures specified in its regulations and judicial

precedent to interpret the scope of the order in relation to the component at issue.  *Id.*

(citing 19 C.F.R. § 351.225(k); *Walgreen*, 620 F.3d at 1352).

        The Federal Circuit went on to state that, when the merchandise is subject to the

order, the agency would next "determine whether the inclusion of that merchandise

within a mixed media item should nonetheless result in its exclusion from the scope of

the order." *Id.* at 1302-03.  Here again, Commerce "must begin with the language of the

order." *Id.* at 1303.  If the scope of the order expressly states that the order includes

subject merchandise within a mixed media set, the scope inquiry ends. *Id.*  If, instead,

the order sets forth criteria for applying the order to subject merchandise shipped or

sold with non-subject merchandise, then Commerce must consider that criteria in

conducting the inquiry. *Id.*  When, as here, "the order is silent, Commerce must next

determine whether the (k)(1) materials help to interpret the order"—i.e., (1) the petition;

(2) Commerce's initial investigation; and (3) prior agency determinations by Commerce

(including scope rulings) and the ITC. *Id.*

    When the "the history of the antidumping order"—the first and second of the

(k)(1) materials—does not suggest "that subject merchandise should be treated

differently on the basis of its inclusion within a mixed media item, . . . a presumption

arises that the included merchandise is subject to the order." *Id.* at 1303-04.  "[T]o

overcome this presumption, Commerce must identify published guidance issued prior to

the date of the original antidumping order . . . that provides a basis for interpreting the

order contrary to its literal language." *Id.* at 1304; *see also id.* at 1305 (noting "the

requirement that any implicit mixed media exception to the literal scope of the order

must be based on preexisting public sources").

    The Federal Circuit identified several sources that Commerce could consult to

ascertain whether the presumption of inclusion is overcome.  Those sources included

Commerce's prior scope rulings—provided they were publicly available when the order

in question was issued.  *Id.* at 1304.[9]  The appellate court noted, however, that the

scope rulings submitted in that proceeding "lack clarity," *id.* at 1305, and reiterated that

Commerce's mixed media scope determinations typically lack "'formal definition[s],'

'generally applicable criteria,' or 'bright line rule[s]' for conducting mixed media

inquiries," and instead evince "'ad hoc determinations,'" *id.* (quoting *Walgreen,* 620 F.3d

at 1355–56) (alterations in original).  The Federal Circuit acknowledged that prior scope

rulings interpreting the order in question may also be consulted, provided "they do not

articulate new interpretive criteria . . . not announced when the antidumping order was

originally issued."  *Id.* at 1304 n.4 (citing *Walgreen*, 620 F.3d at 1356).  The appellate

court also suggested that Commerce could consider "the (k)(2) factors, to the extent

that they are relevant to resolving the mixed media inquiry," or "the HTSUS

classification system" to determine "whether a tool kit is a single, unitary item or a mere

aggregation of items, if Commerce can point to prior published rulings in support of this

practice."  *Id.* at 1305.  The appellate court emphasized that it was not "decid[ing]

whether by relying on these sources Commerce could reasonably interpret its

antidumping order to exclude [from the order] the nails included within [the] toolkits," but

---

[9] At oral argument, the parties agreed that Commerce's scope rulings are publicly available in Commerce's Public File Room and are listed in a Federal Register notice alerting the public to the nature of the scope ruling.  Oral Arg. 20:30-21:46, 22:30-24:15 (time stamps from the recording); *see also Mid Continent Nail Corp. v. United States* ("*Mid Continent IV*"), 38 CIT ___, ___, 24 F. Supp. 3d 1279, 1286 (2014) (finding that Commerce's scope rulings were publicly available).

that "Commerce may attempt to develop such an interpretation utilizing the sources we

have identified." *Id.*

On remand, Commerce reviewed prior mixed media scope rulings and attempted

to use them to articulate an ascertainable standard to guide the identification of the

proper subject for a mixed media scope inquiry. *Mid Continent IV*, 24 F. Supp. 3d at

1283. In particular, Commerce developed a four-factor test[10] and applied those factors

to the nails and toolkits at issue, finding that it should "focus the scope inquiry on the

toolkits rather than the steel nails." *Id.* at 1283-84. Commerce then analyzed the

toolkits pursuant to the (k)(2) factors and concluded that the nails included within the

toolkits should be excluded from the scope of the order. *Id.* at 1284.

The CIT again rejected Commerce's test. *Id.* at 1285-89. The court found that

the cited scope rulings "do not identify a broader ascertainable mixed media standard"

and instead demonstrate that Commerce has determined the subject of the scope

inquiry "based on the facts and circumstances in each particular case." *Id.* at 1289.

The court further found that "Commerce failed to explicitly address how its mixed media

test reflects [the] presumption" articulated in *Mid Continent III*. *Id.* Following that

decision, Commerce issued its fourth remand determination, under protest; considered

---

[10] The factors included:

> (1) the "unique language of the order"; (2) the "practicability of separating
> the component merchandise for repackaging or resale"; (3) the "value of
> the component merchandise as compared to the value of the product as a
> whole"; and (4) the "ultimate use or function of the component
> merchandise relative to the ultimate use or function of the mixed-media
> set as a whole[.]"

*Mid Continent IV*, 24 F. Supp. 3d at 1283 (citation omitted).

the nails in isolation without regard to the toolkits; and determined that the nails

contained within the imported toolkits were within the scope of the order.  *See Mid*

*Continent Nail Corp. v. United States*, 39 CIT ___, ___, 61 F. Supp. 3d 1287, 1289

(2015) (affirming Commerce's scope determination).  The Government did not appeal

the court's affirmance of the fourth remand determination.

### B.  Issue of Waiver

Before addressing the merits of Plaintiff's arguments, the court addresses

whether Plaintiff has waived its challenges to the scope determination.  Plaintiff's

moving and reply briefs largely advance the argument that Commerce incorrectly

determined that the Joint Restraint Kits were within the scope of the *STR Order*.  *See,*

*e.g.*, Pl.'s Mem. at 1-2 (framing the issue as whether Commerce correctly determined

"that Joint Restraint Kits are included within the scope of the Order"); *id.* at 15-17

(presenting arguments as to why "Star Pipe's Joint Restraint Kits are not subject STR");

*id.* at 21-24 (applying the (k)(2) factors to the Joint Restraint Kits).  At oral argument,

Star Pipe averred that it used the term "Joint Restraint Kits" as a short-hand reference

for in-scope products, and any lack of precision arose from difficulties in discussing

mixed media products.  Oral Arg. 13:53-14:03, 15:36-15:38, 19:50-19:56.  The

Government acknowledged that it was likewise imprecise in its brief but noted that

Commerce had properly focused the scope inquiry on the STR components of the Joint

Restraint Kits.  Oral Arg. 17:58-18:17.

Plaintiff's representations at oral argument are difficult to square with its briefs,

which clearly distinguish subject STR from the Joint Restraint Kits and analyze *Mid*

*Continent III* from the perspective of the Joint Restraint Kits.  *See, e.g.*, Pl.'s Reply at 2

("The question at issue is not whether the STR components should be considered out of

scope merely because they are part of a mixed media set, but rather whether the mixed

media set (the joint restraint kit), as a whole, should be considered in-scope or out of

scope."); Pl.'s Reply at 3, 6 (referring to the presumption in relation to the mixed media

set).  By focusing on the purported inclusion of the Joint Restraint Kits in the scope of

the *STR Order*, Plaintiff largely failed to develop arguments clearly responsive to the

scope determination Commerce actually made.  Nevertheless, the court does not find

that Star Pipe has waived its ability to challenge the scope determination and will

address Star Pipe's principal challenges to Commerce's application of the *Mid*

*Continent III* mixed media test.

### C. Commerce's Determination that Star Pipe's Subject STR Components are Presumptively In-Scope[11]

Pursuant to the Federal Circuit's guidance, subject merchandise contained in a

mixed media set is presumptively in-scope when the relevant order is silent on the

matter and the petition and investigation documents do not suggest the product's

exclusion.  *Mid Continent III*, 725 F.3d at 1303-04.  Here, as Commerce explained, the

*STR Order* is silent on the issue of mixed media.  Final Scope Ruling at 7; *STR Order*,

74 Fed. Reg. at 17,155.  Following the Federal Circuit's guidance, Commerce turned to

---

[11] Star Pipe conceded that its Joint Restraint Kits contain subject STR components.
Final Scope Ruling at 7.  Accordingly, Commerce proceeded to determine whether the
inclusion of the subject STR in the Joint Restraint Kits should result in their exclusion
from the scope of the *STR Order*.  *Id.*

the (k)(1) materials to determine whether a presumption of inclusion arose.  Final Scope

Ruling at 7.  Commerce considered it "important[]" that the petition and the ITC's final

determination noted that steel threaded rod is used in "waterworks applications," which

application is the purpose of Star Pipe's Joint Restraint Kits.  *Id.* at 8 & nn.48-49

(citations omitted).[12]  Commerce therefore concluded that the STR components of the

Joint Restraint Kits were presumptively subject to the *STR Order*.  *Id.* at 8.

     Although Commerce did not clearly explain why the uses of subject STR

discussed in the (k)(1) materials supported a presumption of inclusion, *see* Final Scope

Ruling at 8, the court may "uphold a decision of less than ideal clarity if the agency's

path may reasonably be discerned," *NMB Singapore Ltd. v. United States*, 557 F.3d

1316, 1319 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.

Ins. Co.*, 463 U.S. 29, 43 (1983)).  At a minimum, Commerce's discussion does not

suggest that STR components imported in a set intended for a particular use "should be

treated differently on the basis of [their] inclusion within [such a set]."  *Mid Continent III*,

725 F.3d at 1304.

     Star Pipe's argument that the petition and the ITC's final determination do not

suggest the inclusion of joint restraint systems in the scope of the *STR Order* misses

---

[12] Commerce also reviewed prior scope rulings interpreting the *STR Order* and noted that none have addressed mixed media sets.  Final Scope Ruling at 8 & n.47 (citation omitted).  While Commerce considered these rulings to determine whether a presumption should arise that Star Pipe's STR components are within the scope of the *STR Order*, *see id.*, *Mid Continent III* contemplated consideration of prior scope rulings interpreting the order at issue (provided they do not include criteria post-dating the order) to determine whether any presumption of inclusion may be overcome, 725 F.3d at 1304 n.4.

the mark.  *See* Pl.'s Mem. at 16-17; Pl.'s Reply at 5-6.  As discussed above, the issue is

whether the STR components---not the Joint Restraint Kits—are presumptively in-

scope.  *See supra* Section I.B.  Additionally, the Federal Circuit explained that the

presumption arises when "neither the text of the order nor its history indicates that

subject merchandise should be treated differently"—i.e., excluded from the scope—

based on "its inclusion within a mixed media item."  *Mid Continent III*, 725 F.3d at 1304.

The presumption does not depend upon the (k)(1) materials affirmatively indicating the

*inclusion* of subject components of mixed media items in the scope.  Accordingly,

Commerce's determination that Star Pipe's STR components are presumptively in-

scope is supported by substantial evidence.

### D.  Commerce's Determination that the Presumption Was not Overcome

After finding that the STR components are presumptively in-scope, Commerce

rejected Star Pipe's arguments that the presumption was overcome.  Final Scope

Ruling at 8-9.  Commerce declined Star Pipe's invitation to revisit earlier scope rulings

issued in connection with the antidumping duty order on cased pencils from China in

which Commerce excluded various mixed media kits from the scope of the order.  *Id.* at

8.  Commerce explained that those scope rulings turned on fact-specific analyses of the

(k)(2) factors and the CIT had found several of the rulings to lack "a coherent and

ascertainable standard . . . that would allow importers to predict how Commerce would

treat their mixed media products."  *Id.* at 8 & n.54 (quoting *Mid Continent IV*, 24 F. Supp.

3d at 1286-87); *see also* Star Pipe's Cmts. at 7-8 & n.5 (citing *Certain Cased Pencils*

*from the People's Republic of China*, 59 Fed. Reg. 66,909 (Dep't Commerce Dec. 28,

1994) (antidumping duty order) ("*Pencils Order*")).  Commerce dismissed Star Pipe's

reliance on the absence of the HTSUS classification covering Joint Restraint Kits from

the scope of the *STR Order* because the scope contemplated that subject merchandise

could enter under a different tariff provision.  *See* Final Scope Ruling at 9 & n.56

(quoting *STR Order*, 74 Fed. Reg. at 17,155) ("While the HTSUS subheadings are

provided for convenience and customs purposes, the written description of the scope of

this investigation is dispositive.") (alteration omitted).[13]  Commerce also determined that

an analysis of the (k)(2) factors was "not necessary."  *Id.* at 7.

Plaintiff now contends that *Mid Continent III* required Commerce to consider each

of the sources identified by the Federal Circuit as possible bases for overcoming the

presumption of inclusion; i.e., scope rulings issued in connection with the *Pencils Order*,

the (k)(2) factors, and the HTSUS classification system.  *See* Pl.'s Mem. at 18, 24-28;

Pl.'s Reply at 7-8, 10-13.  Plaintiff further contends that Commerce was required to

consider the (k)(2) factors by reason of the agency's initiation of a formal scope inquiry.

Pl.'s Mem. at 19; Pl.'s Reply at 8-9.

Defendant contends that Commerce correctly declined to revisit the scope rulings

issued under the *Pencils Order*; an analysis of the (k)(2) factors would not supplant the

rule that Commerce may not exclude subject merchandise imported as part of a mixed

media set from the scope of an order absent a preexisting public basis for doing so; and

---

[13] Commerce disagreed with Star Pipe's suggestion that *Mid Continent III* was wrongly decided and should not be followed, noting that although the agency had submitted its ultimate redetermination under protest, it did not appeal the CIT's decision affirming that determination.  Final Scope Ruling at 9.

Star Pipe has not identified preexisting published guidance supporting Commerce's

consideration of HTSUS subheadings.  Def.'s Resp. at 16, 19-22.  Defendant further

avers that Commerce was not required to consider the (k)(2) factors simply because the

agency initiated a scope inquiry.  According to Defendant, the agency disclaimed any

need to refer to the (k)(2) factors in the Initiation Notice, *id.* at 18 (citing Inquiry Initiation

Notice at 1), and the Federal Circuit afforded Commerce discretion to decide whether

such analysis was warranted, *id*. at 19 (citing *Mid Continent III*, 725 F.3d at 1305).

   The court finds that a remand for further consideration of the sources discussed

in *Mid Continent III* is unwarranted.  Moreover, Commerce did not need to conduct a

(k)(2) analysis solely by reason of its initiation of a formal scope inquiry.

   The *Mid Continent III* court was clearly guided by the concern that Commerce

provide adequate notice to the importing community about conduct that is regulated by

its antidumping duty orders.  725 F.3d at 1300-01.  "[T]he requirement that antidumping

orders only be applied to merchandise that they may be reasonably interpreted to

include ensures that before imposing a significant exaction in the form of an

antidumping duty, Commerce will provide adequate notice of what conduct is regulated

by the order."  *Id*. at 1300 (internal quotation marks and citation omitted).  By the same

token, however, "merchandise facially covered by an order may not be *excluded* from

the scope of the order unless the order can reasonably be interpreted so as to exclude

it."  *Id*. at 1301.  For purposes of scope interpretation in the context of mixed media

inquiries, Commerce has elected to adopt the guidance provided in *Mid Continent III*

and at the same time declined to adopt regulations or other prospective criteria that

would articulate the bases upon which Commerce could interpret an order to exclude otherwise-subject merchandise when included in a sufficiently distinct mixed media set. See Final Scope Ruling at 4-5 (identifying *Mid Continent III* as supplying the relevant legal framework).  Thus, the agency is left with a paradigm in which a component of a mixed media set is presumed to remain within the scope of an order and the paths available for exclusion are seemingly limited.

While *Mid Continent III* permitted Commerce to attempt to interpret an order using the identified sources, the appellate court did not *require* Commerce to conduct its mixed media analysis in any particular fashion.  *See id.* at 1305 ("We simply hold that Commerce *may* attempt to develop such an interpretation utilizing the sources we have identified.") (emphasis added).  Moreover, the court did not require Commerce to use the suggested sources.  *See id.* at 1304 (noting that "guidance *may* be found in . . . prior scope determinations[]"); *id.* at 1305 ("Commerce *may* attempt to draw an ascertainable standard from [prior scope rulings] . . . . ."); *id.* at 1305 ("Commerce . . . *may* [] rely on the (k)(2) factors, to the extent that they are relevant . . . ."); *id.* at 1305 ("Commerce *may* also consult the HTSUS classification system . . . .") (emphases added).  *Mid Continent III* thus instructs that subject components of a mixed media kit remain in-scope unless and until Commerce identifies a basis for interpreting the order to exclude the components that is rooted in preexisting published guidance.  *Id.* at 1304.  The parameters for inquiring into whether any such basis exists are, however, left to Commerce's discretion.

In view of the foregoing, the court cannot find that Commerce erred in concluding that the presumption of inclusion was not overcome.  Commerce was under no obligation to revisit the scope rulings issued in connection with the *Pencils Order*.  Commerce abandoned any effort to identify and amalgamate any individual teachings of these rulings and instead concluded that the rulings were resolved based on the characteristics of the products at issue.  Final Scope Ruling at 8.  Commerce effectively adopted the CIT's finding that most of the rulings lack an ascertainable standard "allow[ing] importers to predict how Commerce would treat their mixed media products." *Mid Continent IV*, 24 F. Supp. 3d at 1289; *see also* Final Scope Ruling at 8 & n.54 (citation omitted).  Star Pipe argues that even if the scope rulings "do not create a specific set of guidelines allowing 'importers to predict' how Commerce would treat their mixed media products," they "would at least have placed importers on notice that there is no presumption that mixed media sets are in scope."  Pl.'s Reply at 11 (emphasis omitted); *see also* Pl.'s Mem. at 26-27 (making a similar argument).  Star Pipe misunderstands the inquiry.  Following *Mid Continent III*, Commerce may apply a presumption of inclusion to the subject component, distinct from the mixed media kit. 725 F.3d at 1304.  Overcoming that presumption *requires* guidance that would be ascertainable to an importer so as to place them on notice about conduct regulated (i.e., merchandise covered and merchandise excluded) by the scope of an antidumping duty order.  *Id.* at 1300-01, 1305.  Commerce reasonably concluded that the scope rulings failed to provide that guidance.

Star Pipe also fails to persuade the court that Commerce erred in declining to consider the (k)(2) factors.  Star Pipe argues that a (k)(2) analysis "would have demonstrated . . . that Joint Restraint Kits are distinct from in-scope STR."  Pl.'s Mem. at 21.  Star Pipe's argument does not speak to the relevance of a (k)(2) analysis for purposes of demonstrating that the presumption of inclusion applicable to the STR components of the Joint Restraint Kits might be overcome.  Star Pipe also presents no arguments reconciling its requested analysis with the due process concerns identified in *Mid Continent III* or the requirement that any exclusion "be based on preexisting public sources."  *See Mid Continent III*, 725 F.3d at 1300-01, 1305.

Star Pipe further argues that Commerce erred in relying on "standard [HTSUS] language contained in every scope description" to dismiss the purported significance of the Joint Restraint Kits' particular tariff provision.  Pl.'s Reply at 12; *see also* Pl.'s Mem. at 28.  Again, Star Pipe points to no "prior published rulings" supporting Commerce's consideration of HTSUS subheadings as part of its scope interpretation.[14]  *See Mid Continent III*, 725 F.3d at 1305.[15]  Accordingly, Commerce's determination that the

---

[14] To the extent that Commerce did consider and dismiss Star Pipe's argument that the STR components should be excluded from the scope based on the Joint Restraint Kits' HTSUS classification, Final Scope Ruling at 9, such consideration could be considered harmlessly erroneous.  *See Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996).  Correcting Commerce's error would not change the outcome because it would involve declining to address Star Pipe's argument rather than rejecting it on the merits.  *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1383 n.8 (Fed. Cir. 2008).

[15] In fact, the Federal Circuit instructed that "Commerce may also consult the HTSUS classification system *in deciding whether a tool kit is a single, unitary item or a mere aggregation of items*, if Commerce can point to prior published rulings in support of this

presumption of inclusion was not overcome is supported by substantial evidence and in accordance with law.

Additionally, Commerce was not required to consider the (k)(2) factors simply because it initiated a formal scope inquiry.  When the agency "finds that the issue of whether a product is included within the scope of an order . . . cannot be determined based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1) of this section," the agency will initiate a scope inquiry.  19 C.F.R. § 351.225(e).  When the (k)(1) materials "are not dispositive," the agency "will further consider" the (k)(2) factors.  *Id.* § 351.225(k)(2).  Star Pipe conflates the decision to initiate a scope inquiry with the conclusion that the (k)(1) materials are not dispositive. *See* Pl.'s Reply at 9.[16]  While an agency finding that it cannot resolve a scope inquiry "based solely" on the application and the (k)(1) materials will always precede a finding that the (k)(1) materials "are not dispositive," they are not the same.  Subsection

---

practice." *Mid Continent III*, 725 F.3d at 1305 (emphasis added).  The court previously used the phrase "single, unitary item" as synonymous with "unique product." *See id.* at 1298 (noting Commerce's distinction between mixed media items "treated as a single, unitary item" as compared to those constituting "a mere aggregation of separate items") (citing *Walgreen,* 620 F.3d at 1355–56).  The court's statement suggests that overcoming the presumption is tantamount to finding that the mixed media set at issue is a unique product.  Here, Star Pipe declined to assert any argument that its Joint Restraint Kits represent a unique product.  Oral Arg. 43:30-45:33.

[16] Star Pipe also cites several cases in support of its argument that Commerce was required to consider the (k)(2) factors.  Pl.'s Mem. at 18-19; Pl.'s Reply at 8. However, the cited cases simply hold that Commerce must consider the (k)(2) factors when its decision that the (k)(1) materials dispose of the inquiry lacks substantial evidence. *See Sango*, 484 F.3d at 1381-82; *Toys "R" Us, Inc. v. United States*, 32 CIT 814, 819 (2008); *OTR Wheel Eng'g, Inc. v. United States*, 36 CIT 988, 996-97, 853 F. Supp. 2d 1281, 1289-90 (2012).  The cases do not stand for the proposition that Commerce must consider the (k)(2) factors because it initiated a scope inquiry.

351.225(e) of Commerce's regulations simply suggests that Commerce will initiate a

scope inquiry when something more than the application and (k)(1) materials is

required—for example, as occurred here, further input from the interested parties.  *See*

*Final Scope Ruling* at 2.  While the regulatory framework directs Commerce to consider

the (k)(2) factors only in the context of a formal scope inquiry, Commerce is not required

to consider the (k)(2) factors in every scope inquiry.  *See Meridian Prods., LLC v. United*

*States*, 39 CIT ___, ___, 125 F. Supp. 3d 1306, 1311 (2015), *rev'd on other grounds*,

890 F.3d 1272 (19 C.F.R. § 351.225(e) does not preclude Commerce "from [] resolving

a scope issue without resorting to the factors of § 351.225(k)(2)" when it initiates a

scope inquiry).

      In sum, Commerce's determination that Star Pipe's STR components are within

the scope of the *STR Order* is supported by substantial evidence and in accordance

with law.  Accordingly, Commerce's scope determination will be sustained.

## II.  Plaintiff's Challenge to Commerce's Liquidation Instructions

      Star Pipe contends that Commerce may not order CBP to retroactively suspend

liquidation of, or assess antidumping duties on, Star Pipe's Joint Restraint Kits that

entered before the date on which Commerce initiated the scope inquiry.  *See* Pl.'s Mem.

at 28-34; Pl.'s Reply at 13-21.[17]   Star Pipe argues that Commerce's initiation of a formal

---

[17] When Commerce conducts a scope inquiry pursuant to 19 C.F.R. § 351.225(e) "and
the product in question is already subject to suspension of liquidation, that suspension
of liquidation will be continued, pending a preliminary or a final scope ruling."  19 C.F.R.
§ 351.225(l)(1).  When Commerce issues a final scope ruling pursuant to subsection
351.225(f)(4) and finds "that the product in question is included within the scope of the

scope inquiry and subsequent clarification of an ambiguous order means that the

agency may only issue liquidation instructions ordering CBP to collect antidumping

duties prospectively, on entries made after the date on which Commerce initiated the

scope inquiry.  *See* Pl.'s Mem. at 33-34; Pl.'s Reply at 20-21.  The Joint Status Report

filed in this case demonstrates that Star Pipe's challenge to the liquidation instructions is

now moot.

As noted in the Background section, on November 30, 2018, the court ordered

the Parties to provide a joint status report addressing the status of Star Pipe's entries

that entered prior to the initiation of the scope inquiry.  Nov. 30, 2018 Order.  In short,

that status report indicates that all of Star Pipe's pre-initiation entries have been

liquidated.  Jt. Status Report at 3.  While the Joint Status Report provides more detail

with respect to Star Pipe's pre-initiation entries and when they were liquidated, after

close review, the court has determined that no further action by the court is warranted.

In particular, while certain entries were liquidated after the court entered an

injunction, that injunction, proposed by Plaintiff and consented to by Defendant,

specifically and simply referred to "Joint Restraint Kits" that were the subject of the final

scope ruling.  *See* Oct. 3, 2017 Order at 1.  As Star Pipe acknowledges in the Joint

Status Report, in the pre-initiation entries in question, Star Pipe did not designate the

---

order, any suspension of liquidation under paragraph (l)(1) . . . of this section will
continue."  *Id.* § 351.225(l)(3).  If, however, "there has been no suspension of
liquidation, [Commerce] will instruct [CBP] to suspend liquidation and to require a cash
deposit of estimated duties, at the applicable rate, for each unliquidated entry of the
product entered, or withdrawn from warehouse, for consumption on or after the date of
initiation of the scope inquiry."  *Id.*

goods as "Joint Restraint Kits."  Jt. Status Report at 4.  Instead, Star Pipe apparently

assumed that the injunction's reference to "Joint Restraint Kits" in connection with the

scope ruling would suffice to notify CBP officials that more than 200 different types of

joint restraint systems identified by various names other than "Joint Restraint Kits" in the

entry documents were covered by the terms of the injunction simply because Star Pipe

had attached a list of those products to its scope request presented to Commerce.  *Id.*

at 4-5.  The court disagrees.  The terms of the injunction were vague as to the full range

of products subject thereto and, thus, the court declines to find that CBP liquidated the

entries contrary to the terms of the injunction.[18]  When CBP liquidated Star Pipe's pre-

initiation entries, CBP did not assess antidumping duties on those line items.  Jt. Status

Report, Ex. A (Decl. of Merlin A. Hymel, Jr.) ("Hymel Decl.") ¶¶ 14-16, 19, ECF No. 49-

1.  Those liquidations are now final.[19]

---

[18] In any event, neither Party has moved the court to take any action in response to the liquidations.  *Cf. Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (noting the options available to the court to remedy liquidations in violation of an injunction).

[19] Voluntary reliquidation by CBP is governed by 19 U.S.C. § 1501.  Pursuant to the relevant version of the statute in effect when the entries were made, CBP is time-barred from reliquidating those entries to include the assessment of antidumping duties.  *See* 19 U.S.C. § 1501 (2012) (providing for reliquidation within 90 days "from the date on which notice of the original liquidation is given or transmitted to the importer, his consignee or agent"); 19 U.S.C. § 1501 (Supp. V 2012) (providing for reliquidation within "[90] days from the date of the original liquidation"); Trade Facilitation and Enforcement Act of 2015, Pub. L. No. 114–125, § 911, 130 Stat. 122, 240 (2016) (amending section 1501 on a prospective basis); *United States v. Great Am. Ins. Co. of New York*, 41 CIT ___, ___, 229 F. Supp. 3d 1306, 1326 (2017) ("[T]he court is guided by the plain language of the statute in effect when the subject entries were made."); Hymel Decl., Ex. 1 (dates of entry).

At oral argument, Star Pipe alerted the court to the existence of [[

]].[20]  Star Pipe asserted that the existence

of [[                                   ]] requires the court to rule on its challenge to Commerce's

liquidation instructions in the event the court sustains Commerce's scope determination.

Star Pipe pointed to *Heartland By-Products, Inc. v. United States* ("*Heartland VII*"), 568

F.3d 1360 (Fed. Cir. 2009) in support of its argument that the issue is not moot.[21]

In *Heartland VII*, the Federal Circuit explained that "a defendant's voluntary

cessation of a challenged practice does not" render an issue moot "*unless* 'subsequent

events made it absolutely clear that the allegedly wrongful behavior could not

reasonably be expected to recur.'"  568 F.3d at 1368 (quoting *Friends of the Earth, Inc.*

*v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)) (emphasis added).

Here, the "allegedly wrongful behavior" is the assessment of antidumping duties on Star

Pipe's pre-initiation entries.  However, the finality of liquidation of all of these entries and

the conclusion of the pre-initiation period means that the retroactive assessment of

duties "could not reasonably be expected to recur."  *Heartland VII*, 568 F.3d at 1368.

---

[20] Specifically, [[




]].
[21] See *Heartland VII*, 568 F. 3d at 1361-64, for a summary of the six opinions leading up
to that Federal Circuit opinion.

Moreover, [[                                              ]] is governed by

a statutory and regulatory framework that is separate and distinct from Commerce's

authority to issue instructions to CBP regarding the suspension of liquidation and

collection of antidumping duties.  *Compare* [[

        ]], *with* 19 C.F.R. § 351.225(l).  To the extent Star Pipe seeks the court's

views on an issue potentially relevant to [[                          ]] [22] but which is not

directly implicated here, Star Pipe seeks an impermissible advisory opinion.  *See United

States v. Fruehauf*, 365 U.S. 146, 157 (1961).[23]

        The U.S. Supreme Court has made it clear that "judicial [p]ower" is to be used "to

render dispositive judgments, not advisory opinions."  *Camreta v. Greene*, 563 U.S.

692, 717 (2011) (internal quotation marks and citation omitted).  "[A]n opinion

advising what the law would be upon a hypothetical state of facts" is an advisory

opinion.  *Verson, a Div. of Allied Prods. Corp. v. United States*, 22 CIT 151, 153, 5 F.

Supp. 2d 963, 966 (1998) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246 (1971)).

Finality of liquidation renders the retroactive assessment of antidumping duties on Star

Pipe's entries entirely hypothetical.  While the degree to which [[

                                                      ]], the

---

[22] In other words, whether [[
                                        ]].
[23] While the liquidation of Star Pipe's pre-initiation entries currently moots Plaintiff's challenge to those instructions, should the issue be properly joined at some point in the future, Star Pipe may seek to have the court consider whether relief is appropriate through a motion pursuant to CIT Rule 60 or application of the court's ancillary jurisdiction, as may be appropriate.  *See., e.g.*, *Heartland By-Prods., Inc. v. United States*, 424 F.3d 1244, 1251 (Fed. Cir. 2004) (*Heartland V*).

resolution of which may ultimately turn on the effective date of Commerce's scope

determination, "a federal court does not have the 'power to render an advisory opinion

on a question simply because [it] may have to face the same question in the future.'"

*Verson*, 22 CIT at 153-54, 5 F. Supp. 2d at 966 (quoting *Nat'l Labor Relations Bd. v.*

*Globe Sec. Servs., Inc.,* 548 F.2d 1115, 1118 (3rd Cir. 1977)).  Under these

circumstances, the court concludes that this issue is moot and any opinion on

retroactivity would be impermissibly advisory.[24]

### CONCLUSION

For the foregoing reasons, the court finds that Commerce's determination that

STR components of Star Pipe's Joint Restraint Kits are within the scope of the *STR*

*Order* is supported by substantial evidence and in accordance with law.  The court

further denies Plaintiff's challenge to Commerce's liquidation instructions as moot.

Judgment will enter accordingly.

/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated:    July 8, 2019
New York, New York

---

[24] Additionally, Star Pipe has waived any argument that [[
]] represents *a retroactive assessment* of duties by
CBP in accordance with Commerce's liquidation instructions by failing to present the
argument in its briefs, which were filed after the entries liquidated.  *See Novosteel SA v.*
*United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[A] party waives arguments
based on what appears [or does not appear] in its brief."); Hymel Decl., Ex. 1 (dates of
liquidation from April to May 2018).  *See generally* Pl.'s Mem. (filed June 22, 2018); Pl.'s
Reply (filed Oct. 30, 2018).